Yes, Your Honor. Thank you, Judge Smith. And may it please the Court, I'm Derek Schaffer from Quinn Emanuel, arguing on behalf of the defendant's appellants. I'd respectfully try to reserve three minutes for rebuttal, and I'll track my time accordingly. Very well. Your Honors, to affirm and to decline to enforce arbitration in this case would require an unprecedented expansion of this Court's Knowing Waiver doctrine. This case differs categorically in its facts and its circumstances from any in which Knowing Waiver was found to be lacking. Let's start, if we could, Your Honors, with the dispositive provision. You can find it in Excerpts of Record 56. It's part of a five-page employment contract written in plain English. And it is within those four corners, in paragraph 10, that the employment agreement as signed by the plaintiff expressly covers, quote, any controversy or claim relating to or arising out of her employment with the company or the termination of her employment. That's what she signed, Your Honors. If you go on to the next page, ER 57, you'll see it explicitly affording her opportunity to consult with counsel. And this is the same employment agreement, Your Honors, that the plaintiff is herself relying upon when it comes to her substantive case. She's alleging, among other things, that there was breach of the specific binding terms of that employment agreement. So in this case, Your Honors, to let her escape the plain and otherwise controlling terms of that employment agreement would amount to letting her pick and choose which terms should be enforced for their terms. That poses a problem that has not been presented in any of this Court's Knowing Waiver decisions. Can I ask you a question? I'm not sure anymore what Knowing Waiver is. What do you think it is? I think it means you kick the tires of the general principles of contract law. In this Court's Knowing Waiver decisions, the seminal ones in the 1990s, Lye, Renteria, and Nelson, there were problems where an employee didn't know that he or she was signing an arbitration agreement. They may not have even been presented with that arbitration agreement. You had to go hip bones connected to the thigh bones connected to the ankle bone to figure out that somehow the signed agreement connects up to whatever is a booklet that incorporates by reference other rules that are changing. And so this Court had a real concern about whether there was a valid contract formed on this point. And in this context, we understand the Court may be especially sensitive to whether arbitration has been agreed to. But I don't think, Judge Rastani, that it departs from ordinary principles of contract law. I don't think it's meant to interpose some artificial judicial obstacle to arbitration. Of course, the Supreme Court and the Congress have been absolutely clear that there can be no such judicial obstacle to private agreements. The courts do seem, in the Ninth Circuit, do seem to talk about the civil rights laws, and we'll just assume for the purpose of this argument that these claims are similar, and that you need express waiver. So what does express waiver mean? I think it means that here you have an agreement that is unambiguous in encompassing statutory claims no less than non-statutory. And you have an employee who signed… It didn't say statutory claims. It said employment claims, right? It said any employment claims arising from or relating to the employment agreement. And I think, Judge Rastani, if you asked an employee who just agreed that any employment claims don't need to be arbitrated, does that mean that you have to arbitrate your statutory employment claims? The natural answer, I think, from a lawyer and from a layperson would be, of course. That's among my employment claims. And that has to be the rule, Your Honor, because if we were in California State Court, if we were in any federal court throughout the nation, this language that has been agreed to, which may be used nationwide by certain employers, is going to result in a ready compulsion of arbitration quite reliably and predictably. And, of course, the FAA has meant to create a uniform national framework for favoring the enforcement of arbitration agreements. And the U.S. Supreme Court has been absolutely clear that those terms will be honored. And, Judge Rastani, let's look at the Ninth Circuit cases not going back to the 1990s but more recently. Within the last five years, I'm talking about Ashby and Dylag. In Ashby, there was a question as to how the claim was presented and accepted and found that it was. But also what was in the agreement was a specific reference to civil rights claims or statutory claims, something beyond employment claims, right? Let me be precise, Judge Rastani. Yes, in some sense. In the agreement that the employees signed, there was no reference to arbitration of a particular category of claims. In Ashby, it then referred to the booklet. And the booklet then said what Your Honor recited about statutory claims being included. But, of course, throughout this whole thread of cases, this court has not been especially concerned about the exact terms of the ancillary agreement incorporated by reference. It's been focused on what's in the four corners of what the employees signed. And in Ashby, tellingly, there wasn't any particular specification of scope, yet the court compelled arbitration. We have an easier case because of what's so clear within the four corners of what the employees signed. But it doesn't stop at Ashby, Judge Rastani. After that, you have the Dylag case where Judge Bybee, who also was part of the Ashby panel, part of a unanimous panel including Judge O'Scanlan and Judge Tsushima, said when you had language that was far less clear than the language here, the correct result was to compel arbitration. In the Dylag case, the language of the agreement actually said it was any dispute arising under the agreement. So it suggested, if anything, that it would be kind of contractual employment claims that would be subject to arbitration. But this court, applying the black-letter law of arbitration agreements, including the presumption favoring arbitration, had no difficulty saying that statutory claims should be compelled for arbitration, no less than any other. That's unpublished. What statute was it? I believe it was Title VII, Your Honor. I will confirm that before I stand back up here. It's a non-presidential case. It is a non-presidential case. But I'm telling you my reading of the Ninth Circuit cases, and I am fortified in that by the fact that three judges of the Ninth Circuit have agreed with me. When rubber meets road, as far as what is the correct result, in facts that create a less powerful case for arbitration than what we have here. What role, if any, does the fact that the plaintiff in this case is, I understand, an experienced corporate lawyer play in our analysis of these arbitration clauses? Judge Smith, I think this should be the easiest case for compelling arbitration, because of what you cite that is undisputed about her sophistication as someone within the relevant industry, but also her legal training. But I also know, Judge Smith, that within the four corners of the employment agreement was opportunity to consult with counsel. My friends from the other side cite the Morrison decision of the Sixth Circuit decided en banc that also looked at this question of knowing waiver, not citing this court's precedents. But there, Judge Smith, it was looking at different factors. How sophisticated is this plaintiff? How much opportunity was there to consult? How clear is the provision? If you look at all those factors, Your Honor, this is, again, an easy, overwhelming case for compelling arbitration of the statutory claims, no less than the others. In fact, the only way I respectfully submit that the plaintiff can prevail before this court is if there is some talismanic magic words requirement that says you have to reference the statutes, and then the next case will say you have to reference the specific statute, and then the case after that will say the specific version of the statute that's in place at the time of the disputerizing, and on we will go from there. And what it would amount to is what is forbidden. We have another question. I understand that argument. There was a case dealing with the FLSA, and it said the court's knowing waiver doctrine doesn't apply. So what did that court mean by something more than what was required in the FLSA context? I'm sorry. I don't know what case, Judge Rustani, you're referring to right now. And I think if we're talking about the… Okay, I'll find it. I'll tell you. It must be the Koenig case. The Koenig case. You sat on it, Judge Rustani, of course. Did I? You did. You were part of that panel. And the result was not to compel arbitration, but there was a serious problem in the Koenig case, which was that the employee had not been put on notice that there was any contract being agreed to. The only thing that the employee signed was an acknowledgment that certain terms had been read and had been understood. It was not a contractual agreement the likes of what you have here. I was referring to a different case. I'm referring to the Koenig case, which I was not on that panel. And the court said, hey, FLSA is not the kind of statutory claim where you have to do something more. This is not a case that requires the application of the knowing waiver doctrine. And I want to know what the more is than you have to do in an FLSA case. I think that there may be certain strictures along the lines that we were talking about, Judge Rustani, to the extent that the knowing waiver doctrine remains valid. Where the court will say even more so than in the usual contract case, we're really going to make sure that an employee had fair opportunity to review the terms that were being signed and signed an agreement that encompassed those terms. So you're saying it relates to the presentation and acceptance as opposed to magic words. Absolutely. Absolutely, Judge Rustani. And I would note that I don't see any holdings from this court that say or suggest you need the magic words. And I think intervening Supreme Court precedent has said that any such rule, if this court were ever to adopt it, would be antithetical to the FAA and the precedent construing it. We don't have any cases, do we, in our circuit that require an express reference to a particular civil rights statute in order to comply with the knowing waiver doctrine? I don't see any such case, Judge Smith. I don't see any such case. But I want to take Judge Rustani's question about the specific statute at issue. And I would note that subsequent to the seminal knowing waiver cases, this court, en banc, decided EEOC v. Luce, where it looked specifically at Title VII and the same statutory provisions, the same legislative history that this court had relied upon for its knowing waiver decisions, and said, without overruling those cases, but said essentially that's not the correct reading of Title VII. When Title VII refers to arbitration whenever appropriate and to the extent provided by law, that's simply incorporating by reference the FAA and all of the jurisprudence construing it. And so if anything, if this court needed to reach the question before reversing, and I submit it doesn't, it should be consistent with EEOC v. Luce, consistent with the U.S. Supreme Court's decision in ethic, consistent with the decision of the U.S. Supreme Court in the Kindred decision, it should, if it needed to, overrule that precedent in order to reverse. I see Luce as just saying Duffield's ruling that you couldn't compel arbitration is basically dead. It just overruled Duffield, exactly. And I think the reasoning, Judge Rustani, is what I would point this court to. The reasoning that was adopted on Bonk I think does not square with the foundational premises of this court's knowing waiver cases. That said, I don't think you need to reach that in order to reverse here. I emphasize that because you have knowing waiver, and I think this court's recent decisions are especially clear about that. Again, it's Ashby and it's DILAG, and I know DILAG is unpublished, but I think it is a powerful data point that confirms to you what I am saying in submitting. I think I'm over my rebuttal time, but I would pause if the court has any questions for me at this stage. Why don't you save the balance of your time for a rebuttal? So I will. Thank you, Judge Mann. Thank you, Your Honor. Mr. Rubin. Thank you, Your Honor. May it please the court. This isn't a case of first impression. The Ninth Circuit has spoken, and our job is to read the Ninth Circuit cases. There are five cases that require a knowing waiver when civil rights claims are involved. I guess I'll ask the same question. What's a knowing waiver? They define knowing waiver, Judge Rustani, as saying, and I'm quoting now from Nelson at page 762, the choice must be explicitly presented to the employee, and the employee must explicitly agree to waive the specific right in question. And if you look to see how that standard was applied, you look not only to the Nelson case, in which the court looked both to the acknowledgment form and to the underlying handbook, which did refer to employment agreements, and the court concluded at page 762 that that wasn't sufficient, and you look to the Renteria case. Let me just ask you this, Pete. You're reading Nelson as if Judge Reinhart specifically required that each civil rights statute involved had to be called out. He passed away, unfortunately, two or so years ago. During that time, he never was involved in a case where that, what you seem to be implying, occurred, where we said you must specifically refer to the statute. Do you agree that there is no Ninth Circuit case that expressly requires that a particular civil rights statute must be referred to by name in order to have a knowing waiver? That is correct, nor do we argue here that there must be a specific reference to the statute by name. As we understand the cases, and as we read the way those cases were in fact applied in five different Ninth Circuit cases, there must be an explicit reference to statutory employment discrimination claims. And unless there is an explicit reference at a minimum to statutory employment discrimination claims, there is not a knowing waiver within the meaning of the existing case law. There are several different documents that your client signed in a very, very broad language in arbitration. What is it about those that you feel is faulty?  Well, the reason, your honor, when you first started asking me questions that I was quoting from Nelson and from Renteria is because the agreements in this case have the same general reference to cases, controversies, disputes, as was at issue in Renteria and Nelson, in which prior panels of this court said there was no explicit waiver as required by these cases. In these agreements, in this case, what you have is actually an even more clear-cut example of an inadequate knowing waiver. And that is because both in the offer letter at paragraph 10, the offer letter at paragraph 10 does refer to any controversy or claim, but it then says, pursuant to section 9 of a second agreement. That's the confidentiality, non-solicitation, and arbitration agreement. So you look to that second agreement. That second agreement, again, refers to controversy or claim, but it then says that any arbitration has to be, quote, pursuant to the NASD code, which is now the FINRA rules. So the parties, and this is an independent reason why affirmance is required, the pursuant to language. The parties agreed to incorporate the limitations of the FINRA rules. Now, Form U4 FINRA does not... But that's just circular. FINRA now does not require you to arbitrate. FINRA now requires you to do whatever you agree to. It's circular. It refers back to what you agreed to, right? Well, yes, and if you read... Now, what I'm asking the court to do is, if you look at the contract as a whole, you start with Form U4, which plainly does not require arbitration of employment discrimination claims. It doesn't forbid it. It doesn't require it. It says, go forth and negotiate your employment. No, actually, I'm sorry, Your Honor. Form U4 does not. What you're referring to are the FINRA disclosure rules and the FINRA rule, which do say it's not required, but the parties may agree. So the question is, what is meant by that? The Form U4 itself does not require... And so the question is, in March 2014, when Shannon Zoller was hired, and Judge Smith is an attorney, what would a... What was the meeting of the minds? What is the reasonable expectation of the parties? First, you have this Ninth Circuit law. You've got four of the five cases that were decided by March 2014. Second, she was given the Form U4, which merely states that employment discrimination claims are not required to be arbitrated. Third, there is this language that Judge Rustani pointed out that says the parties can agree, but as Judge Tiger said, and this is ER page 20, his understanding was that Ms. Zoller did not, at the time, have notice and did not understand that statutory employment discrimination claims had to be arbitrated under these provisions. Now, if you look at this as a contract case, Judge Tiger made a threshold mistake. He concluded that Pursuant 2 incorporated only the procedures of the NISD rule. That can't be. It can't be for three reasons. One, Pursuant 2 means in accordance with. It wasn't limited to procedures. Two, Pursuant 2 is a term of art that parties use. As I quoted before, the offer letter at paragraph 10 used the exact same Pursuant 2 language as section 9. And third, and I'll point you to the paragraph in the FINRA rules and the disclosure statement right after the one we're talking about. The paragraph that says whistleblowers are never required or permitted to arbitrate under FINRA a whistleblower claim. If Judge Tiger were right, if Pursuant 2 only incorporates the procedures, then there would be a meaningless construction of the FINRA rules because it would mean that if Zoller had a whistleblower claim pursuant to the rules, she would have to arbitrate it under the procedural provisions, but the rules say she can't. Pursuant has to mean what is required by, what is within the scope. And then the question comes, okay, in March 2014, where was the meeting of the minds? What did this attorney understand? She understood that Prudential v. Lye was the law, that Renteria was the law, that Nelson was the law. She was handed the Form U-4, and the Form U-4 said, you don't have to arbitrate statutory employment claims. But that was kind of not the way it went, was it? Didn't she have the offer letter, then the confidentiality, non-solicitation arbitration agreement, then the Form U-4 and the accompanying disclosure? Yes, and the disclosure, that's right. She got all four documents. Okay, but she got them in that order. Right, and when she accepted the offer, all four agreements were in the background. Yes. That is the order in which they were presented. But as she points out in her declaration, when she agreed to arbitrate, she agreed pursuant to the existing law, the limitations of that law, the pursuant to reference. Therefore, my point is simply, even if this panel weren't required, as it is, without an en banc case decision, to apply the five previous cases, there would be a separate and independent ground, a contractual understanding ground, for reaching the same result. At a minimum, there should be a remand to Judge Tiger to determine what the party's contract meant. But the threshold argument is that this panel is bound by the prior rulings of this court, which say that language like was included in the offer letter and the confidentiality agreement, any case or controversy pursuant to, is not an explicit reference to statutory employment discrimination claims sufficient to constitute a knowing waiver. We know the cases. Can I ask you a quick, I'm sorry. No, no, I'm back. I'll take your turn. Please go ahead, Judge. You have on several occasions referred to certain cases, panel cases, three judge cases. My colleague Judge Smith referred to what was going on, and it's no secret to people who were writing that two of our former colleagues who have now passed away were writing decisions incorporating the process. But we don't, and your indication is we have to follow those. What happened was the case was taken in bank. A case was taken in bank. And that was the loose forward case. And in the loose forward case, we came to the conclusion of how the law was going to be with these stray cases that were going around. So any case that's inconsistent with loose forward is no longer binding on us. And you've been citing the other cases and indicating that we have to follow the three judge cards. We don't have to if loose forward covers it. Correct. Because that's the reason of loose forward. Now, relying on loose forward, how would you, setting aside the other three panel, three judge panels, how does loose forward function within your case? And there are three answers, Your Honor. First is what did loose forward do? And Judge Rustani is correct. Loose forward reversed the Duffield decision, which was a case about when, whether Congress precluded any arbitration, even voluntary arbitration of a pre-dispute Title VII claim. This is a completely separate issue. This is what is it? We're not seeking to preclude arbitration. What the panel did in these other five cases is require a heightened standard for knowing waiver of the right to pursue a judicial forum. But there are two more. Wait a minute. Before you go further, you seem to be distinguishing our in-bank case based upon what other three judge cases have done. And I'm not sure that we can follow that. Let me get to the further. Any case after loose forward is fine. We'd like to hear those, but these are the prior cases. Correct, correct. And I absolutely agree with your reasoning, Judge Wallace, but the case that is after loose forward is the Ashby case. And the Ashby case, which is the fifth case that we're relying upon, was 2015, years after loose forward. And Ashby not only held what it did, but it cited loose forward, recognizing that the panel in Ashby knew about loose forward, did not conclude that loose forward was inconsistent with this analysis. And the third reason is that loose forward itself referred to prudential versus lie, the first of the fifth cases. Loose forward, at page 749, note six, noted what the law in the Ninth Circuit was about knowing waiver. Ashby, many years after loose forward, noted loose forward and indicated that its decision was perfectly consistent. So I completely agree with you that if an en banc decision of this court had overruled the line of cases I was relying upon, that would be binding. But in fact, it didn't. It specifically referred to one of those cases in a positive way, and a subsequent three-judge panel of this court in the Ashby case in 2015 acknowledged that its decision was not inconsistent with loose forward, and therefore this panel, short of a further en banc court, is bound by those determinations. Judge Sonning? I have no more questions. Okay. Do any of my colleagues have additional questions for Mr. Rubin? Mr. Rubin, do you have additional things you'd like to say? You've got a minute left. I would like to add one more point, which is in March 2014, again, I pointed out that the court could reach the same result as a matter of contract. I mentioned the formula for the four documents, the attorney's understanding. There was also the Simmons case. The Simmons case is a district court case. This court is obviously not bound by the Simmons case, which decided about two years before Ms. Zoller signed her agreement. But in terms of the party's reasonable expectations at the time, the Simmons case made very clear, a district court case out of the Southern California Published Decision, made very clear that a reference to being in accordance with the NASD rules means only if it is required, only if there is a knowing waiver, is there a sufficient agreement to arbitrate statutory claims. So that body of knowledge that the parties had at the time was sufficient as an alternative basis for going where the prior five decisions of this court required this court to go. Thank you. Very well. Thank you very much, counsel. Your opponent, Mr. Schaefer, has a few moments left of rebuttal. Please proceed. Thank you, Judge Smith. I have four points to make. I'll try to be uncharacteristically brief about each. The first order of business is to correct myself, Judge Rustani, the DILAG case involves statutory claims under the ADEA and the ADA. I'd submit that that's immaterial in the sense that the court had held in Nelson that the ADA was subject to the exact same knowing waiver requirement. So it's immaterial in that sense, and it was deciding that there was knowing waiver under the facts as I explained. The second point, I think there's common ground here, Your Honors, that you decide this case based on the explicit terms that were presented in the employment agreement and agreed to. You don't need to read minds. You don't need to go through a trial to decide what the contract means. Here, again, are those expressed terms. ER 56, paragraph 10. It covers the arbitration agreement that Ms. Zoller signed, covers any controversy or claim relating to or arising out of her employment with the company or the termination of her employment, and on from there. There's just no ambiguity. There's no question that it encompasses these statutory employment claims. The third point, the FINRA rules don't intrude upon this equation. They don't alter it in the least. The district court so ruled. In doing that, he aligned himself with every court that has looked at this. I'd point specifically to the Eighth Circuit in the ING financial case that explained why those FINRA rules that govern the procedures for the arbitration have no bearing upon this, even before you get to the presumption favoring arbitration, and with all due respect to Mr. Rubin, he has no case, no case that goes his way on this. Last, Judge Wallace, loose forward. Loose forward combines, I think, in just the way that Your Honor was suggesting with the Supreme Court's latest instruction, and here I would point to the Epic case and to 1627 and 1630, where the Supreme Court noted it had rejected every effort to conjure conflicts between the Arbitration Act and other federal statutes, and it said what would be required is to have manifested a clear intention to displace the Arbitration Act. That's what you need from the Congress, and when you look at the loose case, you see this court noting that there was no such intention in the Arbitration Act. In fact, just the opposite is true. It was written to be in harmony with the FAA, and so when you get to the court's en banc reasoning in loose and you combine it with what the Supreme Court has said, I think this court should not have difficulty overruling the final precedent if it needed to. Does it make any difference if the agreement meant to refer to the procedures of FINRA or all of the FINRA rules? Does it make any difference? It doesn't, Judge Rustani. I think it's clear enough about the scope of the arbitration. You would have to basically have a superfluous provision of the contract if you then said it's the FINRA rules that specify the scope of the arbitration. So you can't possibly look to that on this question, and even if you did, as you were pointing out, what the FINRA rules say is just as a default, here's what FINRA would say absent a different agreement between the parties, and, of course, you have that different agreement. So this is an easy case for you to get rid of FINRA. It's really just noise, I think, on this key threshold question. My very last point, Your Honors, and returning Judge Wallace to the import of loose, Mr. Rubin cites the Ashby case in 2015 where this court was compelling arbitration without needing to revisit the knowing waiver requirement at all. It wasn't urged to do that in the case, and it had no occasion to do that in the case. And I know better than to tell Your Honors how it works with this court's precedent. But, of course, a drive-by ruling that simply cites prior precedent without examining that precedent in light of intervening precedent, that has no bearing on what this court would confront if it gets to the question whether the prior precedents have been overruled because their foundational premises have been pulled out from intervening reasoning of the U.S. Supreme Court and of this court on law. And with that, I thank the Court for its indulgence, and I subside. Do either of my colleagues have additional questions from Mr. Schaefer? Mr. Schaefer, I, of course, am trying to sort out this thing, and your opposition counsel made a fairly good argument, I thought, on what we should do with loose forward. In my thinking, you always take in bank cases, and anything inconsistent with the panel, you can't rely on. Inconsistent with the courts, you can't rely on as an individual panel. I thought he made a good comment. Do you have any other argument other than on the Aschke case as to whether the district court has used cases that we have essentially eliminated through our in-bank case in loose forward? Your Honor, I think it is really— the only thing that I understood Mr. Rubin to say about loose forward was basically two things. First, the court there had cited the knowing waiver precedents. It did, and it did that in a way that I read as agnostic. It wasn't reaching the question whether those precedents still stood. It was just laying down its holding and its rationale in that case. And when you look at the rationale that this court adopted on bond, and you compare that against the rationale for the knowing waiver cases, specifically as to Title VII, they just don't reconcile. And I would urge the court to look carefully at that, because I think you're absolutely right in your question, Judge Wallace, that really the rationale, the defining rationale for the knowing waiver cases, which is grounded in Title VII's text and legislative history, did not survive loose. And when we get to Aschke in 2015, no party argued to this court that the knowing waiver doctrine was a dead doctrine, just wasn't before the court, nor did the court have to confront that question in order to rule that arbitration was compelled, consistent with the knowing waiver doctrine, because the knowing waiver requirement was met. And we think the same rationale is available to the court here. That's confirmed by the DILAG case, where subsequently Judge Bivey, who was on the Aschke panel, also compelled arbitration on facts that are less powerful than our facts are here for compelling arbitration. And so you can decide the case that way and reverse on that ground, Judge Wallace. But if you decide not to, if you decide that it really comes down to is the knowing waiver precedent still a good precedent, we think it's a straightforward case for overruling, just as we've submitted. And really, we understand that Your Honors will think carefully about those questions. But I think the key components of it are the loose cases, as you cited, and the epic decision of the U.S. Supreme Court, which is its last and clearest word on this subject of what would be required to overcome Congress's clear command in the FAA. Any other questions by my colleagues? Your Honor, there are none. We thank both counsel for their arguments on this interesting case, the case of Zoller v. GCA Advisors, LLC, is submitted, and the Court stands in recess for the day.
judges: Wallace, M. Smith, Restani